WILLIAM H. MARCUS
*vs.*
THE UNITED STATES.

AT LAW.   DECIDED NOV. 17, 1860.

WRIT OF ERROR TO THE CRIMINAL COURT.

*Indictment for keeping a Faro Bank.*

An indictment under the Act of Congress of March 2, 1831, Chapter 37, which enacts that whosoever shall be convicted of keeping a Faro Bank or other common gaming table, shall be sentenced, &c. The following count was held good, which charged that the traverser, "on the 10th of Nov., 1859, and on divers other days, and between that day and the taking out this inquisition with force and arms, at the County aforesaid, a certain *Faro Bank* there situate, for their lucre and gain, unlawfully and injuriously did keep and maintain against," &c.

The indictment contained two counts:

1st.   That Wm. H. Marcus, on the 10th of Nov., 1859, and on divers other days and times, between that day and the day of the taking of this inquisition with force and arms, at the county aforesaid, a certain faro bank there situate, for their lucre and gain, unlawfully and injuriously did keep and maintain against, &c.

2d.   That Wm. H. Marcus, &c., a certain gaming table there situate, for their lucre and gain, unlawfully and injuriously did keep and maintain against, &c.

The jury brought in a verdict of guilty on the first count and not guilty on the second.

Before the jury withdrew from the bar the prisoner, through his attorney, prayed the Court to instruct the jury as follows, viz:

"That unless the jury from the whole evidence shall find that the defendant, within two years next before the finding of the said indictment did keep a faro bank, he is entitled to a verdict of acquittal, and that to keep a faro bank means that he must have continuously, for a series or succession

of days or times, kept such bank, and the keeping one for one day, or occasionally within the two years, is not within the meaning of the statute; and such keeping alone will not be sufficient to warrant a conviction. The word *keep* necessarily implies duration, and not a casual or occasional incidental act."

And the Court gave the instructions as follows, viz:

"Granted with the remarks that keeping applies to all concerned in managing the faro bank, whether the proprietor or the dealer employed by him, or a person employed to lift money won, or to pay money lost, or to give tokens to play with in exchange for money, are engaged in keeping are punishable under the law of 1831. Keeping means a series of transgressions, having a faro bank for play by those the keeper chooses to admit; but not to play at cards daily or frequently is not keeping in the sense of the law, though the keeping need not be continuous from day to day. There may be intervals and still the party guilty, but there must be a succession of acts against the law."

The defendant moves the Court to arrest the judgment on the verdict found in this case because:

1st. There is no criminal offence charged in the indictment.

Motion in arrest of judgment overruled, and writ of error granted.

Opinion of the Court delivered by Judge Wm. M. Merrick:

The only question presented for the consideration of the Court is whether the Criminal Court erred in holding good the 1st count in an indictment, which charges that the traverser, "on the 10th of November, in the year of our Lord one thousand eight hundred and fifty-nine, and on divers other days, and between that day and the day of the taking out this inquisition with force and arms, at the county aforesaid, a certain faro bank there situate, for their lucre and gain, unlawfully and injuriously did keep and maintain against the form of the statute," &c.

This indictment is framed upon the Act of March 2, 1831, Chap. 37, which enacts that whosoever shall be convicted

"of keeping a faro bank, or other common gaming table," shall be sentenced to suffer punishment in the penitentiary for not less than one or more than five years.

The general principles by which we are to test this indictment admit of no dispute. They are found in all the text books, and with their reasons are most succinctly stated by the Supreme Court in 7 Peters 142,[1] as follows, viz: "The general rule is, that in indictments for misdemeanors created by statute it is sufficient to charge the offence in the words of the statute. There is not that technical nicety required *as to form*, which seems to have been adopted and sanctioned by long practice in cases of felony, and with respect to some crimes where particular words must be used, and no other words, however synonymous they may seem can be substituted. But in all cases the offence must be set forth with clearness, and all necessary certainty to apprise the accused of the crime with which he stands charged."

That the crime laid to the traverser's charge in the present instance is a statutory and not a common law offence, and that we are therefore to resort only to the statute, and not to the common law; for its definition and description would hardly seem to admit of doubt after the many instances in which the offence has been brought under the consideration of this Court. (See the cases collected in Ringold's case, 5 Cranch 379), in all of which it has been treated as a statutory offence.

Before the passage of the Act a case came up in which the traverser was charged with keeping a common gambling house, in which, among other things, it was averred that the traverser caused and procured divers idle and evil disposed persons to frequent and come to play together at certain unlawful game called Faro. United States *vs.* Dixon, 4 Cranch C. C. 108-9, in that case the Court said: "The Act of (Maryland) 1797, Chap. 110, Sec. 2, is the only Act in force in this county for restraining any kind of games, except by the laws of the Corporations of Washington and Georgetown, and that Act only prohibits the setting up, keeping and maintaining certain

[1]United States *vs.* Mills.

gaming tables or devices, Faro among the number, in any tavern or house occupied by a retailer of wine, spirituous liquors, &c. The game of Faro is not an unlawful game; no person can be punished under that statute for playing at that game, whether it be played in a tavern or a private dwelling house. The offence under the statute is the setting up and maintaining the table or device. The indictment derives no assistance from any statute, nor does the playing at Faro constitute any part of the offence. If it can be supported at all it must be as an indictment for a common nuisance in keeping a common *gaming house* for lucre and gain, at which divers idle and dissolute persons were permitted to assemble and game for divers large and excessive sums of money."

The Court had long before held (in United States *vs.* Willis, 1 Cranch 511) that playing at any game, even for money, is not an offence at common law. The offence is created by statute, and can only be punished as the statute directs.

The common law is laid down to the same effect by Bailey, Justice, in Rex *vs.* Roziers 2 Dowling and Ryland 346, as follows, viz:

"Playing at a game is not *per se* illegal, unless the betting be excessive, for it is the amount played for, and not the name or nature of the game, which is the essence of an offence in the eye of the law." Such being the state of the common law upon this subject, the first blow against Faro Banks was struck by the Act of Maryland, 1797, Chap. 110; but that statute, as appears in the case of United States *vs.* Dixon above quoted, and by a decision of the Court of Appeals, 2d H. & J. 5, Baker *vs.* State, extended only to cases of a Faro bank or like device, when set up and kept in a tavern or out-house, or place occupied by a tavern-keeper or retailer of wines and liquors.

After the lapse of thirty-four years the prohibition was extended by the law of Congress to the offences of keeping "Faro Banks or other common gaming tables," irrespective altogether of the character of the house or place where they might be kept.

Now what is the true interpretation of this statute in

view of the existing legislation and the evil intended to be remedied—the keeping of a Faro bank or other device for the purpose of gaming for money in a tavern or house where liquors were retailed was already provided against. The statute of 1831 made the offences at which it aims independent altogether of the place where the acts may be done, and it dropped also the further limitation that the games to be criminal must be played for money. So that whatever article of value be the stake, it is equally within the statute as if money alone were played for.

But it is argued that this statute nevertheless did not mean to prohibit all Faro Banks from being kept and maintained, and that the word "Common" is to be supplied in its construction so that it shall read "whosoever shall be convicted of keeping a Common Faro Bank or other common gaming table, &c." Such is certainly not the natural import of the words, but on the contrary the mention of a particular followed by that of the class to which it belongs, in the alternative as expressed by the word "other" is a legislative declaration that the particular has all the characteristics inherent in itself of its class, and so used it serves to illustrate and give character to the general expressions in which the class is described, so that the class is illustrated by all its particular rather than the particular is defined by its class. The expression as used then, according to its natural import is tantamount to saying, "Whosoever shall be convicted of keeping any common gaming table, of which common gaming tables a Faro Bank is one, shall be punished, &c."

Now, although penal statutes are to be construed strictly, so as not to embrace within their purview anything which is not distinctly expressed, yet I know of no rule which requires the natural sense of terms to be rejected, and words not in the statute to be supplied so as to narrow the sense and come short of remedying the evil under which society labors. It is not only fair to presume, but it is our duty to infer that in legislating concerning the game of Faro, Congress knew what every individual knows, that it is a game at which people indiscriminately play for money, and frequently in large sums; and that it is not a game played for amusement,

and hence by its very nature the Faro Bank is a common gaming table. Therefore when the term "Faro Bank" is used in an indictment, a particular kind of common gaming table is spoken of as explicitly and distinctly as if the further terms of definition, "the same being a common gaming table" were superadded.

This interpretation of the law is borne out by the unanimous opinion of this Court at March Term, 1836, (United States *vs.* Cooley, 4 Cranch C. C., 708–9,) in which case it was held that an indictment under the statute would be good, which charged the offence to be either the keeping of a common gaming table or the keeping of a Faro Bank. But it is said that the opinion in Cooley's case was repudiated in the case of United States *vs.* Ringold, 5 Cranch C. C. 379. In that case the Chief Judge maintained (as has already been urged) that the words of the statute "A Faro Bank or other common gaming table," necessarily implied that a Faro Bank is a common gaming table, and that the keeping of a Faro Bank is *per se* made an offence. Upon an admission by the prosecuting Attorney, that a Faro Bank might be innocently kept, Judge Thurston argued that the Faro Bank was too uncertain in itself to maintain an indictment, and hence thought the indictment ought to be quashed. Judge Morsell being unprepared to express an opinion, the case was held under advisement until the following term, when the indictments were quashed. The Chief Judge was not present at nor concurring in that judgment, for which no reasons are given in the report further than a memorandum, that it was understood that the indictments were quashed because the defendant was not charged with keeping a *Common Faro Bank*, nor with keeping a common gaming table. If we compare the indictments in the case of Ringold with the present, a most important difference in structure appears, which is abundantly sufficient to relieve the case from the only objection assigned by Judge Thurston upon the argument to Ringold's indictment, to wit: that a Faro Bank *might* be innocently kept. The indictment there charges only that the traverser on a particular day "did keep a Faro Bank against the form of the statute, &c."

The present indictment goes far beyond that, and contains averments which are entirely inconsistent with the idea, or rather which exclude the conclusion that the Faro Bank was kept innocently, or casually, or for mere amusement; for it avers that on a certain day, " and on divers other days, and times between that day and the taking this inquisition a certain Faro Bank *for lucre and gain unlawfully* and injuriously he did keep and maintain against the form of the statute," &c.

These averments contain all the necessary description of a common law nuisance, viz.: its establishment and continued maintenance for unlawful profit during a considerable space of time. Insomuch then as the present case differs in the important particulars just indicated from Ringold's case, and the indictment contains averments which meet the only objection which was urged in that case, and the decision there was by a divided Court, we do not think that precedent sufficient to establish a rule or decision outside of the very form of indictment then used, nor to control this case which charges the offence, not only in the terms of the statute, but with superadded averments which repel any possible inference that the Acts here charged in manner and form could have been innocent. Moreover we think according to the rule laid down by the Supreme Court, it has that clearness, positiveness, and certainty necessary to apprise the traverser of the precise crime which he must come prepared to defend. It is also abundantly specific to furnish the party with complete record evidence under a plea of *anterfois acquit* or *anterfois convict.* For these reasons we think the count good, and affirm the judgment of the Criminal Court.

Opinion of Judge Jas. S. Morsell.

The indictment in this case contains two counts. The one under which the question arises charges that on the 10th of Nov., 1859, and on divers other days, and between that day and the day of taking of this inquisition, the traverser with force and arms, at the County aforesaid, a certain Faro Bank there situate, for their lucre and gain, unlawfully and injuriously did keep and maintain against the form of the statute, &c.

This indictment is upon the Statute of March 2, 1851, 1st and 12th Sections, which are: "That every person duly convicted of keeping a Faro Bank or other *common* gaming table," &c., in the 1st Section; and in the 12th "or of keeping a Faro Bank or gaming table," &c. These two parts of sections must be taken together in construction so that it will then read "convicted of keeping a Faro Bank or other common gaming table shall be sentenced to suffer imprisonment for a period not less than one year, nor more than five years." At the time of the passage of this law, the Statute of Md., 1797, Chap. 10, was in force and practiced under; the title of this Act is: "To prevent excessive gaming," and reciting that certain persons, &c., carry about with them, from one public place to another certain gambling machines or inventions, calculated to deceive and defraud the innocent and unguarded, to the prejudice of society and the corruption of morals, to put a stop to such pernicious and baneful effect.

"No E. O. A. B. C. L. S. D. or Faro Table *or other* device except billiard tables, for the purpose of *gaming for money*, shall be set up, kept and maintained in any dwelling-house, out-house, or place occupied by any tavern-keeper, retailer of spirituous liquors, &c., on pain," &c. In addition it is made the duty of the magistrate to suppress the playing as in other cases of common nuisance. At the time also the Common Law, as laid down by Chief Justice Abbott, in 1 Barn and Crese, 272,[1] was as follows: "Now in this case the indictment states not only that the defendant kept a common gaming house, but that they permitted persons to play there for divers large and excessive sums of money. The playing for large and excessive sums of money would of itself make any game unlawful, and if so there can be no doubt that this is an offence at common law."

I have thus placed the legislation and common law on this subject together. At the time of the passage of the Act upon which the indictment is founded, in order that it might appear, as I think it clearly does, that although the name Faro Bank was not known to the common law, yet the

---

[1] The King *vs.* Rogier and Humphrey.

crime of which it has made is a species, namely as a common nuisance was, and that in all cases of that nature the description in the indictment must allege the offence as practically applied by the term "common," in contradistinction to "private." This is the very graven of the offence and therefore indispensable. It is true that where the crime is by statutory provision, and the indictment is in the words of the statute, it will be sufficient; but this is a general rule, and only applicable where the statute sets out the crime fully and clearly. The rule, with its qualification, may be found laid down in the case of United States *vs.* Gooding; 12 Wh. 474, 477. The words of the Judge (Story) are: " In general it may be said that it is a sufficient certainty in an indictment to allege the offence in the very *terms* of the statute—we say in *general*, for there are doubtless cases where *more particularity* is required, either from the obvious intention of the legislature or from the *application* of known principles of law;" so again, "In certain classes of statutes the rule of very *strict certainty* has some time been applied when the common law furnished *a close* and *appropriate* analogy, such as the cases of indictments for false pretences," &c. This offence stands on the statute in juxtaposition to the offence indicated in this case. Again at page 477, same case, the Judge proceeds: "This is a penal Act (Slave Trade Act of April, 1818, chapter 375), and is to be construed *strictly*, that is, with *no intendment* or *extension*, beyond the import of the words used; there is no certainty that the legislature meant to prohibit the sailing of any vessel on a slave voyage which had not been *built*, &c., within the jurisdiction of the U. S., &c." So in this case, the statute is a very penal one. There is no reason to think that the statute intended to make it an offence to keep a Faro Bank in a private house and for private purposes, nor that playing at such Bank for any other thing than money, or some other *valuable thing* (neither of which is mentioned in the statute) should be offensive in a penal point of view. It would be entirely inconsistent with the rule just stated in a case like this to *infer* it. I think then I may confidently say, that the word *common* used in the latter part of the sentence should be distributably applied, by which the nature of the

offence would be made to appear and reasonable certainty offered—it seems to me to be the very gravamen of the crime and charge in the indictment, and the charge stated according to the operation of the statute.

The opposing argument following, as it purports the natural order of the word, and concluding that the import is tantamount to saying "whoever shall be convicted of keeping any gaming table—of which *common* gaming tables a Faro Bank is one, shall be punished, &c." seems to be for the purpose of proving that by construction the term "keeping a Faro Bank" may be considered the offence. punishable by the statute. This may be correct, but if so, does not meet the grounds upon which I think the indictment defective. The want of an allegation or averment of the practical application or operation, instead of the equivocal sense in which it may be understood—such as stated in the conclusion of that argument—for although in the construction of the statute this may be correct, yet the rule is very different in the case of an indictment; as I have already shown, the practical operation of the statute ought to be averred, no *intendment* or *implication* can supply a direct allegation of *anything material* in the *description* of the *substance* or *nature* or manner of the crime.

In conclusion, I think the decision of the Court in the case of Ringold is correct. It has stood, and I suppose been acted under for upwards of twenty years, and I think it ought not to be disturbed. For the aforegoing reasons I think the indictment in this case is insufficient, that the judgment ought to be arrested and the decision of the Criminal Court ought to be reversed.